## BEATRICE CREAMERY CO. v. GOLDMAN.

No. 25343.   Dec. 17, 1935.

A. C. Saunders and Hawley C. Kerr, for plaintiff in error.

Hughey Baker and W. C. Henneberry, for defendant in error.

GIBSON, J. Plaintiff in error will be referred to herein as defendant, and defendant in error as plaintiff.

Plaintiff commenced this action in the court of common pleas of Tulsa county against the defendant to recover damages for personal injuries alleged to have been received as a result of being run into and knocked down by defendant's truck.

Defendant pleaded plaintiff's written release of her claims against defendant wherein all said claims were settled for a consideration of $65. The reply alleged fraud on the part of defendant's agents in procuring said release.

Verdict and judgment were for plaintiff, and defendant has appealed.

The errors assigned are grouped and presented under three propositions. The first proposition is as follows:

"The trial court committed reversible error in permitting the continued reference before the jury as to the liability insurance carried by the defendant."

Plaintiff's counsel, in referring to an alleged conversation between plaintiff and the manager of the defendant company, in his opening statement to the jury made the following remarks:

"* * * And then he came back and said that the people he carried his liability insurance with were out of town and he would have to wait until they got back, and she said she couldn't wait and she would have to have some relief—that her ankle was sprained. * * *"

Thereupon, the defendant moved the court to declare a mistrial and discharge the jury, which motion was overruled.

Another reference to defendant's liability insurance occurred when plaintiff was offering her testimony. In answer to a question propounded by her counsel the plaintiff answered: "No, he didn't, he came back and said he couldn't get the doctor because the insurance company, * * *" at which point defense counsel objected and again moved for a mistrial, which motion was overruled.

Defendant says that these statements made by plaintiff and her counsel are highly prejudicial to the rights of defendant, that said statements had no bearing upon the issues of the case and were made for the purpose of appealing to the prejudice of the jury.

Ordinarily, defendant's liability insurance may not be referred to by plaintiff's counsel in his opening statement to the jury in a personal injury action (Bass, Maxwell & Co. v. Independent Gin Co., 140 Okla. 80, 282 P. 635; Wagnon et al. v. Brown, 169 Okla. 292, 36 P. (2d) 723; Brotherhood of Ry. Trainmen v. Brown, 170 Okla. 67, 38 P. (2d) 529); and generally, such insurance may not be the subject of evidence in such cases (Lakeview, Inc., v. Davidson, 166 Okla. 171, 26 P. (2d) 760). Failure of the trial court to declare a mistrial upon proper and timely motion where the question of insurance is improperly injected into the trial constitutes reversible error. The rule is so well settled in this and many other jurisdictions that we deem it unnecessary to discuss the principles upon which the same is based. The authorities are collected in 56 A. L. R. 1418, et seq., and 74 A. L. R. 849, et seq. We may say, however, that the general rule is justified by long experience which has clearly established the fact that juries are prejudicially influenced against defendant by irrelevant remarks of counsel and witness calculated to convey to the jury the knowledge that the defendant is protected against loss.

Certain exceptions to the rule as above announced have been recognized by numerous authorities. 56 A. L. R. 1432; 74 A. L. R. 854 et seq. A general discussion of the different exceptions is unwarranted here for the reason that the statements complained of in the present case, standing alone, are of such prejudicial nature, when considered in the light of the general rule, that we are unable to say with any degree of certainty that the jury were not adversely influenced thereby in rendering their verdict against the defendant. See Aderhold v. Bishop, 94 Okla. 203, 221 P. 752-757.

If the references made to liability insurance in the present case were proper, and the case is to be saved from the operation of the general rule, the alleged improper references must be found to be relevant to the issues as formed by the pleadings, or rendered harmless on account of other circumstances.

To escape liability, the defendant has pleaded a settlement and release executed by plaintiff. In reply, plaintiff alleges fraud on the part of defendant and its agents in procuring the release. Thus fraud became the primary issue. Plaintiff's cause of action was to stand or fall, depending upon her success or failure in establishing the truth of her allegations with reference to that issue. To what extent plaintiff may go in her proof and her declarations to the jury to establish fraud on the part of defendant and its agents in procuring the release must be governed by the rules generally applicable to cases wherein fraud is sought to be established. If the insurance feature is brought into the case not merely to show the fact of its existence but is disclosed as a necessary incident to proof of a material part of plaintiff's case, such reference thereto does not constitute improper conduct on the part of counsel and is not sufficient cause for reversal. In 56 A. L. R. at page 1419, is found the following statement concerning this particular point:

"* * * There are, of course, many ways in which the matter of insurance comes up as an incident to some proper inquiry; more often, however, the plaintiff's attorney designedly attempts to inject a reference to the fact that defendant carries liability insurance solely for the purpose of instilling a prejudice against the defendant into the minds of the jurors. It is this abuse that has led some courts to adopt such stringent rules with reference to this subject."

We believe the question of design on the part of counsel should be given little consideration in determining the question of the prejudicial effect of his declarations. In personal injury actions reference to liability insurance is either prejudicial or is proper and not prejudicial. That such references are innocently made cannot mitigate the damaging effect thereof. Ordinarily, in determining the question, this court will consider only the one element of relevancy. If the references to insurance are irrelevant, the stringency of the rule ordinarily requires a reversal of the cause where the question is properly saved upon appeal.

Plaintiff says that under the circumstances of the present case, the defendant's liability insurance became a relevant question. It is contended that plaintiff was entitled to prove all facts and circumstances tending to show the alleged fraudulent acts of defendant and its agents in procuring the release from plaintiff, and in so doing was entitled to show the interest of the parties participating in the alleged fraud. In support of this contention, plaintiff relies upon the Oregon case of Parker v. Norton, 21 P. (2d) 790. That case deals with the question of the propriety of pleading fraud on the part of the insurance company in procuring a release of claims for personal injury, and is therefore not in point with the case at bar.

In the present case, under the allegations of fraud in the reply, plaintiff was entitled to offer proof of every element necessary to establish the fraud alleged even if that proof incidentally disclosed the fact that an insurance company was directly responsible for the misrepresentations made to plaintiff in procuring the release. It was entirely proper for plaintiff, under the pleadings, to establish the identity of the party making the alleged misrepresentations, and defendant's connection with such misrepresentations. 27 C. J. 31.

While allegations, proof, and references may properly be made to establish the identity of the party perpetrating the fraud, we cannot agree that allegations, proof, and references may be made having as their only purpose a clear intent to convey to the jury the knowledge that the defendant is insured against loss. There is no reason in law for telling the jury by pleading, proof, or statement of counsel that defendant is insured against loss. Neither is there legal cause for acquainting the jury with the nature of the interest the party actually perpetrating the fraud may have in the fraudulent transaction. That is a matter of which the law takes no cognizance. 12 R. C. L. 395. Since these matters are wholly irrelevant in an action of this character, it is the duty of the plaintiff to confine himself within the bounds of the general rule. The statement of counsel complained of by defendant clearly informed the jury that defendant carried liability insurance. That statement was irrelevant and, under the general rule, highly prejudicial to the rights of the defendant, and should require a reversal of this cause unless it can be said that further developments in the case relieved the statement of its potency and rendered it of

no effect with reference to its prejudicial nature.

One Waldron, who procured the release from plaintiff, testified on cross-examination that he was acting as an employee of the Employers' Liability Assurance Corporation, when he secured the release. Plaintiff was entitled to this information on cross-examination to show the interest of the witness. See numerous authorities, 56 A. L. R. 1439. While this evidence did not tell the jury in so many words that defendant was insured, it could have had no other effect than to convey to them that knowledge. The evidence was properly before the jury and was as forceful in conveying the fact of insurance to them as was the statement of counsel in the first instance. Under the circumstances of this case we believe the improper statement of counsel resulted in no harm to defendant, since the fact of insurance came properly before the jury during the course of the trial. The trial court could have properly declared a mistrial at the time motion therefor was presented, but considered in the light of the whole record, its failure so to do constituted harmless error, and a reversal of the cause on that ground is unwarranted.

Among other errors assigned is the trial court's refusal to direct a verdict for defendant.

Plaintiff's right to recover depended primarily upon her ability to avoid the release. In her attempt to avoid such release she has pleaded fraud on the part of defendant in its procurement. Under this assignment we are to consider the question as to whether the proof of fraud was sufficient to warrant the submission of the cause to the jury.

As to the proof of fraud, the instant case is governed by the general rule applicable to written contracts which is found in the second paragraph of the syllabus of Lusk v. White, 58 Okla. 773, 161 P. 541, as follows:

"It is a well-settled rule that fraud is never presumed, and that, where a written contract is attacked on that ground, the contract will be upheld, unless the allegations of fraud are established by clear and convincing evidence, and the fraud must be predicated upon existing facts, and cannot consist of mere promises as to future action."

The fraud relied upon consists of certain alleged misrepresentations made by defendant's physician and claim agent. The material facts in connection therewith were that the plaintiff was injured by defendant's truck on November 23, 1932. The extent of the injury, so far as known to defendant's physician and agent, was a sprained ankle. On November 25th, at plaintiff's request, defendant authorized her to employ a physician to treat her injury. She consulted her own physician, Doctor Johnson. In the meantime, on November 25th, at the request of defendant, plaintiff submitted to an examination by Dr. Glass, defendant's physician. Dr. Johnson was present at this examination. At that time, according to plaintiff's testimony, Dr. Glass advised her that "her foot would be well in a few days," or "her foot would be well in two or three days." Four days thereafter plaintiff went, voluntarily, to the office of the defendant's claim agent, a Mr. Waldron, seeking a settlement of her claims. On that date she signed the release for a consideration of $65. Waldron made some investigation and settled with plaintiff on the basis of five weeks' disability at $10 per week, the amount plaintiff was earning at that time, together with her account with Dr. Johnson. Plaintiff testified that Waldron, during the negotiations, made the statement that if she did not settle that way, she would get nothing; that if she went to a lawyer, his company had thousands of dollars to fight her and other poor people like her. In signing the release she says she acted and relied upon the foregoing statements of the physician and agent and was misled thereby to her damage.

The ankle did not heal as rapidly as Dr. Glass' statement had indicated. There was evidence tending to show that other injuries had developed as a result of the accident. Those injuries consisted of menstrual disturbances manifesting two days after the accident and continuing some four or five weeks. Plaintiff thought the condition natural and did not mention the same to the defendant's agents. This condition being unknown to defendant, the alleged misrepresentations could not have extended thereto.

The contract of release was broad enough in its terms to include every injury, known or unknown, suffered by plaintiff as a result of the accident. If plaintiff's injuries were unknown or misunderstood by both parties, then it may be said that the contract was voidable on the ground of mutual mistake, had plaintiff sought to avoid the

release on that ground. The only ground alleged is fraud.

As to the alleged false representations of defendant's physician, the instant case presents a state of facts very similar to the facts disclosed in Davis v. Higgins, 95 Okla. 32, 217 P. 193. The plaintiff in that case, as does the plaintiff in the instant case, relied principally upon the rule announced in C., R. I. & P. Ry. Co. v. Burke, 73 Okla. 258, 175 P. 547, as follows:

"The settlement and release of a cause of action brought about by false representation of material facts on the part of a surgeon, the servant of the defendant, upon which plaintiff relied as to the injuries received by plaintiff, notwithstanding the falsity of said representation was unknown to the surgeon making them, may be rescinded and avoided, although there was no fraud or other wrongful intent to deceive or defraud."

In this connection the court, in the Burke Case, had the following to say:

"We are of the opinion that the positive statements made by Dr. Porter, the servant of the defendant, to the plaintiff, were material, and that plaintiff had a right to rely thereon in making settlement, and said representations being untrue in fact, even though the falsity was not known to the said surgeon and were not made with intent to deceive the plaintiff, plaintiff had a right to rescind the settlement, as the statement of the surgeon of the company that the injuries * * * were not permanent and he would entirely recover, upon which statement plaintiff relied, constituted constructive fraud; fraud in law."

In discussing the holding in the Burke Case, the court, in Davis v. Higgins, supra, quoted the third paragraph of the syllabus in Quapaw Mining Co. v. Cogburn, 78 Okla. 227, 190 P. 416, as follows:

"Where the plaintiff in a personal injury case is induced to execute a release of damages by the false and fraudulent representations of a physician in the employment of the defendant, or sent to him by the defendant, that his injuries are but slight or temporary, the physician well knowing the contrary, the release will not be binding."

The court then made the following statement:

"The last case correctly states the law relative to invalidating the release by reason of fraudulent misrepresentations. The rule announced in C., R. I. & P. Ry. Co. v. Burke, supra, is supported by many of the reported cases, but there is no reason why a release of this kind should be invalidated

for fraudulent representations except for the same reasons any other written instrument would be. The confusion has probably arisen out of a confusion of the law relative to invalidating contracts because of mutual mistake with the law applicable in cases based on fraudulent representations."

The court then stated the essential elements of actionable fraud as follows:

"* * * (1) That the representations were material; (2) that they were false; (3) that they were known by the party making them to be false, or that such party made them recklessly, without any knowledge of their truth, and as a positive assertion; (4) that they were made with the intention that they should be acted upon by the party to whom they were made; (5) that such party acted in reliance upon them; and (6) that he thereby suffered injury. Henry v. Collier, 69 Okla. 24, 169 P. 636; Cooper v. Gibson, 69 Okla. 105, 170 P. 220; King v. Howeth & Co., 42 Okla. 178, 140 P. 1182; Dozier v. Northrop, 89 Okla. 67, 213 P. 304."

In the instant case the plaintiff, in her attempt to avoid the release, did not plead mutual mistake as to an existing fact. In order to hold the release invalid under her allegations, it must appear that the representations were as to a material existing fact, and that such representations were either known to the maker to be false or were recklessly uttered, regardless of their truth, and that the representations so made were relied on by the plaintiff to her injury. Davis v. Higgins, supra.

The evidence in the instant case discloses no circumstance surrounding the transaction of settlement not ordinarily present in usual business dealings between normal parties. Plaintiff was not persistently sought after nor unduly prevailed upon to sign the release. She could read, and did read the release. There is no evidence that she was below normal in intelligence while the transaction was in process of completion. The known injury was as apparent to plaintiff as it was to the physician, and there is no evidence that the statement of Dr. Glass was not his actual opinion entertained by him in good faith. The statement attributed to Waldron could have had no intimidating effect upon a reasonably intelligent person sufficient to constitute fraud. There is no evidence indicating that plaintiff's mentality was overpowered or overreached thereby. The record clearly indicates that she acted with deliberate intention when she executed the release. We think the rule announced in Davis v. Higgins, supra, in the fourth paragraph of the syllabus thereof, is aptly invoked in the instant case in

view of this condition of the record. It is as follows:

"A person who executes a release for a claim for damages for personal injuries received, and who acted deliberately and intelligently, cannot rescind it for fraudulent representations upon discovering that the injuries did not heal as rapidly as he supposed at the time of signing the release, even though the attending surgeon told him he would be all right in six months, where no fraud, deceit, or imposition was practiced upon him, and the opinion of the surgeon was given in good faith."

To the same effect is C., R. I. & P. Ry. Co. v. Perkins, 115 Okla. 233, 242 P. 535.

Plaintiff says the decision in C., R. I. & P. Ry. Co. v. Burke, supra, has never been overruled, and that it is still authority for the proposition that mistake in such cases may constitute constructive fraud. In support of this contention, counsel urge the case of St. L. & S. F. Ry. Co. v. Cauthen, 112 Okla. 256, 241 P. 188. In that case mutual mistake was specifically pleaded and relied upon by the plaintiff. The question of fraud was not present. While the decision in the Burke Case has not been specifically overruled, the decision in the case of Davis v. Higgins was a direct disapproval of the proposition therein expressed that mutual mistake may amount to constructive fraud in such cases.

In Midland Valley Ry. Co. v. Clark, 78 Okla. 121, 189 P. 184, cited by plaintiff, the facts disclosed were wholly dissimilar to the facts in the present case. There the plaintiff was ignorant and unable to read and was constantly pursued by defendant's claim agent. Such were not the facts here.

The record discloses no evidence of actionable fraud. In view of such circumstances, we hold that the evidence was not sufficient to warrant a submission of the cause to the jury, and that the action of the trial court in overruling defendant's motion for a directed verdict constituted error.

The judgment of the trial court is reversed and the cause remanded, with directions to enter judgment for defendant.

McNEILL, C. J., and BAYLESS, WELCH, and PHELPS, JJ., concur.