## FIXICO v. HARMON.

No. 26617.   June 29, 1937.

Richard Martin, Hal Crouch, Phillip N. Landa, and Q. D. Gibbs, guardian ad litem, for plaintiff in error.

W. C. Alley and E. M. Carter, for defendant in error.

WELCH, J. The relative positions of the parties here are reverse to that occupied in the trial court, and they will be referred to herein as plaintiff and defendant, as they appeared in the court below.

The suit is to recover damages for personal injuries sustained by reason of a collision of the defendant's automobile with one driven and occupied by persons not involved in this suit. Plaintiff was a passenger in defendant's automobile at the time of the collision. The cause was tried to a jury, resulting in a verdict and judgment for plaintiff in the sum of $7,861, and defendant has appealed.

It is first urged that:

"The court erred in refusing to declare a mistrial upon disclosure to the jury by plaintiff's witness and her counsel that the defendant was protected by insurance."

This contention is based upon the following facts and condition of the record: Lizzie Grayson, who was also a passenger in the defendant's automobile at the time of the collision, was produced as a witness for the plaintiff. It appears that about the next day after the accident this witness had signed a written statement at the request of defendant's attorneys.

After the statement had been identified and admitted in evidence and read to the jury, counsel for defendant proceeded:

"Q. Now, Lizzie, you have heard the statement read which you have identified as being one you gave to these other attorneys for the defendants a day or two after the accident. Is there anything in that written statement that was not true or that you now wish to change in any way? A. In this paper you mean? Q. Yes. A. Well, Mr. Gibbs said just sign it; said it was some kind of insurance and won't hurt you."

No further mention was made of insurance by this witness except the following which occurred upon redirect examination by plaintiff's attorneys:

"Q. And when they came out there, they told you it would be all right? A. Yes, sir. Q. That it was just something in reference to insurance? A. Yes, sir. Q. And if you would sign it, it would be all right? A. Yes, sir."

Whereupon the defendant moved for a mistrial, which was overruled by the court.

The defendant asserts that the reference to insurance made by the witness upon

cross-examination was not responsive to the question asked, and was unexpected on the part of defendant's attorneys. She asserts, further, that she did not then move for a mistrial, hoping that the significance of the answer had escaped the jury, and not caring thereby to emphasize the remark in the presence of the jury. She asserts, however, that plaintiff's attorneys, on redirect examination, purposely emphasized the reference to insurance as shown by the subsequent questioning hereinabove quoted, and that this was done for the purpose of prejudicing the jury, and that the record thereby shows that the jury was informed that the defendant carried liability insurance which would protect her in case of an adverse judgment in this cause. The following authorities are cited by defendant. Yoast v. Sims, 122 Okla. 200, 253 P. 504, 56 A. L. R. 1418-25; Wagnon v. Brown, 169 Okla., 292, 36 P. (2d) 723; Woolworth Co. v. Davis, 41 F. (2d) 342; Hankins v. Hall, 176 Okla. 79, 54 P. (2d) 609.

We have examined the authorities cited and are mindful of the general rule heretofore embraced by this court that information conveyed to a jury, in such cases as this, that a judgment rendered in favor of plaintiff will ultimately be paid by the defendant's insurance carrier instead of the defendant personally, is held to be prejudicial error warranting a reversal of the cause if plaintiff prevails. We observe from these authorities and the texts generally upon the subject that the application of the principle is governed by the facts shown in the individual case. We have observed, also, a number of opinions by this court where it was held the rule was inapplicable. See Aderhold v. Bishop, 94 Okla. 203, 221 P. 752; Letcher v. Skiver, 99 Okla. 269, 226 P. 1029; Tankersley v. Webster, 116 Okla. 208, 243 P. 745; Teeters v. Frost, 145 Okla. 273, 292 P. 356; Lakeview, Inc., v. Davidson, 166 Okla. 171, 26 P. (2d) 760; Beatrice Creamery Co. v. Goldman, 175 Okla. 300, 52 P. (2d) 1033; Fike v. Peters, 175 Okla. 334, 52 P. (2d) 700.

In the Frost Case, supra, it will be observed that the court concluded that the references therein made were too remote to justify the application of the rule. We have concluded likewise here. It was not entirely unnatural for the Indian woman who was testifying in this case to feel called upon to offer an explanation, or give her reasons for signing the statement about which she was being questioned, and if the answer was at all justified for that reason, it is indeed questionable whether or not the rule should be applied under the decisions first hereinabove cited, which support the rule. Whatever may be the proper application of the rule, we are convinced that the same should not be applied here, for the reason that the reference made to insurance is too remote and not sufficient to advise the jury that the defendant carried insurance which would protect her in case of an adverse judgment in this cause. It fails to advise the nature of the insurance referred to, and could just as easily have referred to some form of insurance other than liability insurance. It is just as easy to assume that it referred to personal accident insurance carried by the defendant, or even by the plaintiff or some other occupant of one of the automobiles. It could as easily have referred to insurance covering damage to one or the other of the automobiles. We think it farfetched and visionary to assume that the members of the jury would thereby be informed that the defendant in this case carried insurance which would protect her in case of a judgment for damages inflicted upon the plaintiff as herein shown. Under all of the facts here, we hold that the court committed no reversible error in refusing to declare a mistrial.

The defendant next contends:

"The court erred in admitting evidence offered by the plaintiff of the financial worth of the defendant over the defendant's objection."

We think the trial court did err in admitting in evidence that the defendant lived in a large home and owned four automobiles, but the court instructed the jury to disregard any evidence as to defendant's financial status, and the record fairly indicates that they did so. Although evidence is erroneously admitted, such error does not always require reversal.

In Lindley v. Kelly, 47 Okla. 328, 147 P. 1015, this court in the fifth paragraph of the syllabus thereof held as follows:

"Witnesses were permitted to testify as to the contents of a bill of sale, and the court properly instructed the jury to disregard such testimony. Held, not sufficient ground to justify a reversal of the cause."

See, also, the case of Aderhold v. Stewart, 172 Okla. 72, 46 P. (2d) 340.

In Yukon Mills & Grain Co. v. Imperial Roller Mills Co., 34 Okla. 817, 127 P. 422,

it is held in the third paragraph of the syllabus:

"It is not every error occurring at the trial that will warrant this court in reversing the judgment of a trial court. This court, in every stage of action, must disregard error or defect in pleading or proceeding which does not affect the substantial rights of the adverse party."

And the fourth paragraph of the syllabus:

"Before a cause will be reversed on account of the admission of incompetent evidence, it must affirmatively appear that the admission of such evidence resulted prejudicially to the interests of the one making such objection."

In St. L.-S. F. Ry. Co. v. Routh, 133 Okla. 168, 271 P. 835, this court held in the fifth paragraph of the syllabus thereof:

"Where plaintiff, in an action for damages for personal injuries, is permitted, over the objection of defendant, to introduce evidence showing that plaintiff is married and has a family, a verdict for plaintiff will not be set aside on account thereof, where it clearly appears that the evidence of plaintiff's injuries is such that the verdict is not excessive."

In Bartlesville Zinc Co. v. James, 66 Okla. 24. 166 P. 1054, the court said:

"While the action of the court as to admitting and refusing to admit certain evidence may be, as to some of said evidence complained of, subject to criticism from a strictly technical view, we are of the opinion, and so hold, that the action of the court in regard to such evidence was not so prejudicial to the defendant as to warrant a reversal of this cause. It is a statutory requirement (section 6005, Revised Laws 1910—now 3206, O. S. 1931) that a cause shall not be reversed 'for the improper admission or rejection of evidence,' unless the error complained of 'has probably resulted in a miscarriage of justice or constituted a substantial violation of a constitutional right,' which we think has not occurred in this case."

The record here shows that the plaintiff was a middle-aged woman in good health prior to the accident, and employed with some regularity as a trained nurse. She appears to have had broad experience in her profession, and was at the time of the accident in defendant's employ, and she was being taken to defendant's home as such an employee when the accident occurred.

An examination of the entire record convinces us of the strength of plaintiff's cause upon the merits, and it appears highly improbable that the verdict of the jury would have been different in the absence of the objectionable testimony. The evidence is strong that the plaintiff was painfully and dangerously injured by the accident, and there is little to show that same was not caused by the unwarranted acts and conduct of the defendant and her driver. Prior to the accident plaintiff was capable of earning $10 per day, and also performing considerable duties of her housework: subsequent thereto she was confined to the hospital and her bed for some three months suffering great pain, and at the time of the trial, some eighteen months thereafter, she had not recovered from the effects of her injuries, being required still to remain in bed several days at the time at frequent intervals, and being continuously under the care of a physician, and it appearing in evidence that her injuries were permanent. She had, to the time of trial, expended some $1,400 in hospitalization, nurse hire, medical treatment, etc. She sought damages in the sum of $37,000 and was awarded $7.861, which included her expenses in seeking recovery from her injuries. From these facts we do not feel that the verdict was excessive or induced by prejudice, or that the jury was influenced by improper evidence.

The defendant next contends that the court erred in admitting testimony as to the hospital and doctors' bills submitted to the plaintiff, without competent proof as to their reasonableness. Most of this testimony was given by the plaintiff, and it related to specific amounts which had either been paid or had been presented to her by her doctors and others. There was no doubt from her testimony regarding the amount of the several items, but the objection thereto goes to the proposition that the plaintiff was not qualified to testify that the amount of the bills was reasonable. The defendant cites Derr Construction Co. v. Gelruth, 29 Okla. 538, 120 P. 253, and M., O. & G. Ry. Co. v. Collins, 47 Okla. 761, 150 P. 142, as supporting her contention in this regard.

We observe from the pleadings that these items of expense were incorporated in plaintiff's petition and made a part of her alleged damages. She did not therein itemize same in detail, but alleged that such sums amounted to $2,000. No motion to make more definite and certain was filed, nor did defendant by her pleadings, or any offer of proof, question the reasonableness thereof. Nothing upon the face of the

record here would indicate that any of the items are unreasonable. We conclude that the evidence relating thereto was competent and sufficient to submit the issue as to the amount of damages in this respect to the jury. We note the following statement in Nichols' Applied Evidence, vol. 2, page 2045:

"In an action for personal injuries, plaintiff's testimony as to what bills he has incurred on account of services rendered by his physician and his hospital treatment was admissible."

In Townsend v. Keith, 168 P. 402, the Appellate Court of California said:

"The court did not err in overruling defendant's objection to the question asked of plaintiff as to what bills he had incurred on account of services rendered by his physicians and for hospital treatment. While the correct measure of damage is the necessary and reasonable value of the services rendered, rather than the amount which may have been paid for such services, nevertheless the amount paid for the services is some evidence as to their reasonable value.

"The expenses incurred amount to approximately $200; i.e., $150 for physician, $10 for specialist, $32 for hospital bill, and $30 or $40 for medicines. This on its face does not seem to be unreasonable, the reasonableness of the expenses which plaintiff had incurred was not disputed by the defendant on the trial, and therefore the failure of the trial court's charge to the jury to limit its findings to the reasonable value of the expenses incurred was not an error which prejudiced the defendant."

See, also, Fleming v. Flick (Cal. App.) 35 P. (2d) 210; Zilke v. Johnson, 22 N. D. 75, 132 N. W. 640, and San Antonio v. Porter (Tex. Civ. App.) 59 S. W. 922.

We find nothing in the cases cited by the defendant contrary to our conclusion here in this respect. In the Gelruth Case, supra, there was no evidence purporting to show the amount of any of the bills paid or submitted, and in the instant case we are inclined to remark in the words employed in the Collins Case, supra:

"If defendant desired to put in issue the reasonableness of the charge, it should have introduced evidence for that purpose."

Defendant next urges that the trial court erred in instructing the jury that it might take into consideration the permanency of plaintiff's injuries, because there was no evidence that she was permanently injured.

Plaintiff's physician, who had treated her continuously since the date of her injury up to the date of trial, testified in detail as to her injuries which were serious. She had not recovered, though treated for many months. He testified in effect that medical science knew no cure for her condition. While he admitted that nature and time might work some improvement or some cure of her impaired condition, his testimony may be fairly construed as expressing the opinion that she was permanently injured. There was no contrary indication by the nature or character of the injuries.

The defendant cites Jones v. Sechtem, 131 Okla. 155, 268 P. 201; Shawnee-Tecumseh Traction Co. v. Griggs, 50 Okla. 566, 151 P. 230, and Forest & Gilmore Co. v. Hurry, 165 Okla. 29, 24 P. (2d) 653, as authority for her position that the testimony furnished no affirmative evidence as to the permanency of plaintiff's injuries. In the Jones Case, supra, the expert or medical testimony was to the effect that sometimes such patients recovered, and in the Griggs Case the doctor testified affirmatively that he did not know whether the injuries were permanent or not; that his medicine had not cured them. There was no positive testimony there to the effect that medical science knew of no cure for the injury. In the Hurry Case, supra, the medical testimony was to the effect that the disability might not be permanent, and that the injury might be for an indefinite period of time. In the present case we conclude the gist of the doctor's testimony is that plaintiff was then disabled and that medical science knew no cure for the disability. Furthermore, the testimony expresses no probability that nature will effect a cure, nor any knowledge of a recovery in such case. Therein it is unlike the medical testimony in the cited cases, in that in those cases it was affirmatively shown that the injured person might or probably would recover with time. Testimony as to the permanency of injuries in cases of this nature is nearly always based upon an opinion of the medical expert, and such opinion is given in the light of experience and knowledge and history of medical science. Necessarily there is always a possibility of recovery, but we think the opinions of this court, and the authorities elsewhere which have come to our attention, go no further than to require that a showing as to such permanency be made with reasonable certainty. We think the testimony to the effect that medical

science knows no cure is equivalent to a positive assertion that in the opinion of the witness the injuries are permanent. If the medical expert knows no cure for an injury, we scarcely see how he could have an opinion other than that the injury is permanent.

In view of the whole evidence, we conclude that the trial court committed no error in this respect. The judgment is affirmed.

OSBORN, C. J., BAYLESS, V. C. J., and RILEY, BUSBY, CORN, and HURST, JJ., concur. GIBSON, J., dissents. PHELPS, J., absent.